## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| RAJDHANI, INC. d/b/a *Maharaja Bhog* and SANJAY KUMAR KASHYAP, <br><br>       Plaintiffs, <br><br>   v. <br><br> U.S CITIZENSHIP AND IMMIGRATION SERVICES; KENNETH T. CUCCINELLI, Acting Director, U.S. Citizenship and Immigration Services; U.S. DEPARTMENT OF HOMELAND SECURITY; CHAD WOLF, Acting Secretary, U.S. Department of Homeland Security; DONNA P. CAMPAGNOLO, Director, California Service Center, U.S. Citizenship and Immigration Services, <br><br>       Defendants | No. _____ <br><br> Complaint for Declaratory and Injunctive Relief, Temporary Restraining Order, and Review of Agency Action under the Administrative Procedures Act |

### I.   INTRODUCTION

1.    Plaintiffs bring this action to challenge the decision of the U.S. Citizenship and Immigration Services ("USCIS") to arbitrarily reverse its prior decision to grant L-1B status to Plaintiff Sanjay Kumar Kashyap ("Mr. Kashyap"), which has caused hundreds of thousands of dollars in financial loss to the company, Plaintiff Rajdhani, Inc. ("Rajdhani") and undue, unnecessary hardship to Mr. Kashyap.

1

2.     Defendants USCIS and its Vermont Service Center had granted an L-1B visa petition filed by Rajdhani on behalf of Mr. Kashyap on October 20, 2017 with a two-year validity period ("original petition") to February 28, 2019. On February 21, 2019, before the end of the validity period, Rajdhani filed for an extension of Mr. Kashyap's L-1 status ("extension request"). Nothing in the nature of the employment, job duties, or the position had changed for this extension request. However, Defendants USCIS and its California Service Center denied the extension. After finding in 2017 that Rajdhani had demonstrated the position of an Executive Chef to be one involving "specialized knowledge" and that Mr. Kashyap fulfilled this criterion, USCIS decided that in the year 2020, they had suddenly ceased to meet such requirements. Because such an agency action was arbitrary and capricious, without legal or factual basis, and because they have and will continue to cause irreparable harm to Plaintiffs, they are entitled to equitable relief from this Court.

3.     Plaintiffs bring this action pursuant to Section 10b of the Administrative Procedure Act, 5 U.S.C. § 702, et. seq., seeking to hold unlawful and set aside the decision of USCIS and of the Director of the California Service Center ("CSC" or "the Director") dated November 20, 2020, denying the Form I-129 Petition for Nonimmigrant Worker, otherwise known as an L-1B petition, that Rajdhani filed on behalf of Mr. Kashyap.

4.     Mr. Kashyap now faces imminent loss of his immigration status, potential detention and removal because of the arbitrary and capricious denial by USCIS to extend his L-1B status. Rajdhani is facing the loss of their Executive Chef for their restaurant, *Maharaja Bhog*, at the Houston location and more than $250,000 USD in lease forfeiture due to the unavailability of an Executive Chef for their planned location in Dallas, Texas.

5.     The USCIS employs largely boilerplate language to issue the denial while asserting a single ground: that the position of Executive Chef was not one involving specialized knowledge as defined in 8 U.S.C. § 1184(c)(2)(B) and 8 C.F.R. § 214.2(l)(1)(ii)(D); and that Mr. Kashyap did not possess such knowledge. Plaintiffs had already overcome this ground when the original petition was denied for the first time in April 2016, appealed, and finally granted on October 20, 2017. As such, the denial of the extension of the *same* petition for the *same* individual filed by the *same* company, is arbitrary and capricious, unsupported by substantial evidence on the record, contrary to established legal precedents, and constitutes an abuse of discretion.

6.     This action asks the Court to hold unlawful and set aside the denial of the L-1B petition by the Defendants.

7.     This action also asks the Court to issue a temporary restraining order and a preliminary injunction reverting to the *status quo* and postponing the

effectiveness of the denial to prevent irreparable harm to Mr. Kashyap. He has now been left without a lawful immigration status in the U.S. and without work authorization to continue in his position as the Executive Chef of *Maharaja Bhog*. This also places the company, Rajdhani, at a great and imminent risk of loss of substantial business and goodwill of its customers.

## II.   PARTIES

8.   Plaintiff Rajdhani, Inc. is the U.S. subsidiary established by Maheshwari Food & Hospitality, Pvt. Ltd. d/b/a *Maharaja Bhog*, in Mumbai, India. Rajdhani, Inc., established and registered with the State of Texas on June 22, 2011, operates the restaurant *Maharaja Bhog*, located at 8338 Southwest Freeway, in Houston, Texas. The parent company has five locations around the world, with the U.S. subsidiary bringing in gross sales of over $1.4 million USD and employing over twenty employees at its Houston location.

9.   Plaintiff Sanjay K. Kashyap is the Executive Chef at *Maharaja Bhog* in Houston, who Rajdhani transferred from its location in Mumbai due to his extensive experience and specialized training in the techniques and traditions unique to this chain of restaurant.

10.   Defendant U.S. Citizenship and Immigration Services ("USCIS") is an agency of the Department of Homeland Security and is responsible for overseeing the adjudication of immigration benefits.

11.     Defendant U.S. Department of Homeland Security ("DHS") is a cabinet department of the U.S. federal government responsible for immigration-related services, enforcement, and investigations. DHS oversees USCIS and its implementation of federal law and policy with respect to immigration benefit applications.

12.     Defendant Kenneth T. Cuccinelli is the Acting Director of USCIS, and he is responsible for USCIS' policies, practices, and procedures, and oversees the USCIS officer responsible for making the decisions at issue in this case. Defendant Cuccinelli is sued in his official capacity.

13.     Defendant Chad Wolf is the Acting Secretary of the DHS, the department encompassing USCIS which is responsible for administration and enforcement of the immigration and nationality laws of the United States. Defendant Wolf is sued in his official capacity.

14.     Defendant Donna P. Campagnolo is the Director of the USCIS California Service Center ("CSC"), and she signed the denial at issue in this case. Defendant Campagnolo is sued in her individual and official capacity.

### III.     JURISDICTION AND VENUE

15.     This case arises under the Immigration and Nationality Act ("INA") § 101, 8 U.S.C. § 1101, et. seq., and the Administrative Procedure Act, 5 U.S.C. § 701, et. seq. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as a civil action

arising under the laws of the United States. This Court also has the authority to grant declaratory relief under 28 U.S.C. §§ 2201-02, and injunctive relief under 5 U.S.C. § 702, and 28 U.S.C. §§ 1361-62. The United States has waived sovereign immunity under 5 U.S.C. § 702.

16.     USCIS' decision to deny Plaintiffs' immigration petition is a final agency decision ripe for judicial review, and Plaintiffs need not have sought an appeal before USCIS' Administrative Appeals Office ("AAO") before invoking the jurisdiction of this Court. *See e.g.*, *Young v. Reno*, 114 F.3d 879 (9th Cir. 1997).

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e), because this is a civil action in which a defendant is an agency of the United States and Defendants DHS and USCIS reside in this judicial district.

## IV.    STATUTORY AND REGULATORY BACKGROUND

18.     In 1970, Congress created the L visa classification for multinational firms to "eliminate problems . . . faced by American companies having offices abroad in transferring key personnel freely within the organization." *See generally* H.R. Rep. No. 91-851, § 1(b), at 5 (1970), as reprinted in 1970 U.S.C.C.A.N. 2750, 2754.

19.     The L-1B immigration classification allows a U.S. entity to transfer a foreign national employee from a related entity abroad temporarily to work for the U.S. entity in a capacity that involves specialized knowledge. 8 U.S.C. §

6

1101(a)(15)(L). The L-1 beneficiary is referred to as an "intracompany transferee." The employee must have worked for at least one year continuously in the preceding three years for the related foreign entity. *Id*. The agency promulgated regulations to implement the statutory provisions. *See* 8 C.F.R. § 214.2(l) (1989).

20.     8 U.S.C. § 1184(c)(2)(B) provides the framework for the specialized knowledge transferee as follows:

> For purposes of section [110l(a)(l5)(L)], an alien is considered to be serving in a capacity involving specialized knowledge with respect to a company if the alien has a special knowledge of the company product and its application in international markets or has an advanced level of knowledge of processes and procedures of the company.

21.     The regulations at 8 C.F.R. § 214.2(l)(1)(ii)(D) further define "specialized knowledge" as follows:

> Specialized knowledge means special knowledge possessed by an individual of the petitioning organization's product, service, research, equipment, techniques, management, or other interests and its application in international markets, or an advanced level of knowledge or expertise in the organization's processes and procedures.

22.     Under immigration employment authorization regulations, certain nonimmigrant classifications, including L-1, are automatically permitted to continue employment with the same employer after the petition expiration date, based on the timely filing of a request for extension of stay, not to exceed 240 days beginning on the expiry date of the authorized period of stay. 8 C.F.R. §§274a.12(b)(12), 274a.12(b)(20). This is referred to as the "240-day rule."

7

23.     Any alien who was unlawfully present in the United States for a period of more than 180 days but less than one year, and then departed, is inadmissible if he again seeks admission within the three years of the departure or removal, and, after unlawful presence for one year or more, is inadmissible for 10 years after departure. 8 U.S.C. § 1182(a)(9)(B).

## V.    STANDARD OF REVIEW

24.     Under the APA, the administrative record is reviewed to determine whether the challenged action is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. *Harris v. U.S*., 19 F.3d 1090, 1095– 1096 (5th Cir.1994); *see* 5 U.S.C. § 706(2)(A). The court will examine the administrative record to ensure that the agency's decision "was based on a consideration of the relevant factors" and that the decision was not "a clear error." *Republic of Transkei v. INS*, 923 F.2d 175, 177 (D.C. Cir. 1991) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971)).

25.     A reviewing court should not overturn an agency's findings simply because alternative findings could be supported by substantial evidence from the same record. *See Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). "It must do more than create

a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices.'" *Id*. (internal quotation marks omitted) (citing *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir.1973); *Payne v. Weinberger*, 480 F.2d 1006 (5th Cir.1973)).

## VI.   FACTUAL BACKGROUND

26.    Rajdhani, Inc. has been engaged in the food service business through the brand name *Maharaja Bhog*, a one-of-a-kind restaurant specializing in vegetarian dishes served in the Indian "Thali" with 30 different menu items each day for 30 days. *See* Exhibit A, Rajdhani, Inc. Letter in Support of Original Petition (Feb 22, 2016). This equals to 900 unique items throughout the month, each item prepared fresh every single day. *Id*. The restaurant is so devoted to serving fresh dishes that it famously does not have any refrigerators or freezers, save for perishables. *Id*. The parent company, Maheshwari Food & Hospitality Pvt. Ltd. ("Maheshwari India" or "parent company"), owns four (4) other locations around the world and creates the base menu for each day's meals and all locations replicate this menu as closely as possible. *Id*.; Exhibit F, Letter from Ashish Maheshwari (submitted in response to Mar 4, 2016 Request for Evidence). This means that at any given day, a patron in Houston will be eating the same item as the one in Dubai. *Id*.; *see also* Exhibit G, Maheshwari India's Letter (submitted in response to Mar 4, 2016 Request for Evidence of Original Petition). The kitchen is fully viewable from the seating area

and the food is all-you-can-eat style, cooked and served traditionally with the waitstaff bringing items to the table – in unlimited amounts – instead of the customers standing on a buffet line. *Id.*

27.    At the time of filing, Rajdhani, Inc. had assets totaling approximately $350,000 USD with $1.4 million USD in gross sales (2015) and over $1 million USD in profit. *Id.* Maheshwari India held assets worth over $317,000 USD (2014), with gross revenue of approximately $1.46 million USD and net profits of approximately $850,000 USD.[1] *Id.* The company employs more than two hundred employees across its four locations in three different countries: India, UAE, and USA. *Id.*

28.    Executive Chefs at the parent company undergo a two-year rigorous training under the owner and creator Mr. Ashish Maheshwari ("Mr. Maheshwari"). *Id*; Exhibit C, Rajdhani, Inc. Letter (submitted in response to Mar 4, 2016 Request for Evidence). They are required to have mastered the cooking styles of all 22 Indian states, while focusing on Rajasthani and Gujrati cooking, as well as having knowledge about the spices and their individual health benefits. *Id.* Exhibit C.

---

[1] Rajdhani, Inc. currently has assets totaling $783,743 USD, and took in $2.144 million USD in gross sales (2019) and over $1 million USD in profit. Under the most recently available financial statements, Maheshwari India held total assets worth over $2,257,000 USD (2019), with gross revenue of approximately $3.625 million USD. The most recent financial statement is attached herewith at Exhibit V. This financial statement was not part of the record at the time of filing the L-1B extension in 2018.

Blending specific spices to create a dish that is reflective of all types of Indian cuisines is unique to this company. *Id*.

29.    The company prides itself on its high standards and rigorous requirements for consistency across all of their five locations in three different countries. Exhibit A. Since they create 900 different items in a span of 30 days that are the same at every location, even a chef with extensive experience in Indian cooking is not able to accomplish the task unless the individual has undergone the two-year, one-on-one, training with Mr. Maheshwari. *Id*. Moreover, there are only five (5) Executive Chefs to have undergone this training, one of whom is Mr. Kashyap, who has been with the company since 2011. *Id*.

Original L-1B petition (filed Feb 25, 2016), Request for Evidence, and Denial

30.    With a growing international business, Rajdhani, Inc. opened its doors to patrons in Houston, Texas in 2011, and filed the original petition in February 2016, seeking to employ Mr. Kashyap as an Executive Chef for three years.

31.    The Premium Processing Unit of the USCIS Vermont Service Center ("VSC") sent a Request For Evidence ("RFE") to establish that Mr. Kashyap will be working in a capacity that requires specialized knowledge; that his prior education, training, and employment qualified him to perform such tasks; and that he had one continuous year of full-time employment abroad with a qualifying organization. *See*

Exhibit B, Request for Evidence on Original Petition (Mar 4, 2016). VSC alleged that the evidence submitted with the petition was insufficient. *Id*.

32.     Rajdhani complied with the RFE and submitted each document requested, including Mr. Kashyap's pay stubs issued by Maheshwari to show that he had been employed by the parent company abroad for more than a year; an organizational chart depicting the structure of the company and staffing levels; and importantly, Mr. Kashyap's job duties with percentages of time spent performing each duty. *See* Exhibit C.

33.     Rajdhani explained that because of the unique manner in which the restaurant is run, only a candidate who has been through the requisite two-year rigorous training by the founder of the company would be able to perform the job duties of the Executive Chef. *Id*. Specialized knowledge was required in the position to maintain consistency across all five of their locations around the world so that in each of their five restaurants, each day, they would serve the exact dishes. *Id*. Their whole business structure is to freshly prepare 900 different dishes within a span of 30 days without adhering to a particular type of cuisine but creating those unique dishes using spices, condiments, and inspiration from all 22 Indian states. *Id*.; *see* Exhibit D, Rajdhani, Inc.'s Business Plan (submitted in response to Mar 4, 2016 Request for Evidence).

34.    Rajdhani further explained that Mr. Maheshwari himself sent each of the five Executive Chefs around the world a list of menu items to be served that month, none of which came with recipes. *Id*. The chefs at each location would have to create those dishes from memory, relying on the rigorous training each of them underwent with Mr. Maheshwari. *Id*.; *see also* Exhibit E, Sample Menu Email sent by Ashish Maheshwari to all five Executive Chefs in India, U.S.  and UAE (submitted in response to Mar 4, 2016 Request for Evidence). Thus, a local chef could not just walk into the Houston location to create those dishes with the exact specifications that would be consistent to what was being served in the other four locations on any given day. *Id*.; *see also* Exhibits F-G. Also unique to the restaurant, Rajdhani explained, is the use of *Five Finger* hand signs as a means of silent communication between the servers and the kitchen staff – another area that all executive chefs have to master to be able to properly run the kitchen without any mishaps and to preserve the carefully-crafted atmosphere of the restaurant. *Id*.; *see* Exhibit H, *Maharaja Bhog*'s Five Finger signs (submitted in response to Mar 4, 2016 Request for Evidence).

35.    Despite all the evidence submitted, the USCIS VSC denied the petition. *See* Exhibit I, Denial of Original Petition (Apr 15, 2016). While finding that the evidence submitted established that the "company's tools and processes are substantially different than those used at other firms within [the] industry," it found

that there was no evidence whether it was "truly different" because it could not

determine from the record whether these tools and methodologies were "different

from those used at similar companies." *Id*. Thus, the USCIS inexplicably found that

the tools and methodologies were "substantially different" yet not so different at the

same time. *Id*.

36.     Further, it found that the beneficiary, Mr. Kashyap, did not possess "an

advanced level of knowledge or expertise in [the] organization's processes and

procedures" since there was nothing "unusual" about an executive chef to possess

an in-depth knowledge of the company's methodologies. *Id*. It found that just

because a beneficiary has specialized training and extensive experience does not

mean he has advanced knowledge, and that the knowledge possessed by Mr.

Kashyap was nothing different or advanced compared with any other Executive

Chef. *Id*.

37.     Regarding the position in the U.S., the USCIS found that it did not

appear to require any special knowledge or advanced level of knowledge/expertise

of the company's processes and procedures because the job duties as listed did not

seem to require distinct or uncommon knowledge or were greatly developed or more

complex in comparison to the general industry. *Id*. It found that "[w]ork experience

and knowledge of a firm's technically complex products do not equal 'special'

knowledge." *Id*.

<u>Motion to Reconsider Denial of the Original Petition and Subsequent Approval</u>

38.     Rajdhani filed a Motion to Reconsider the denial of the original petition to the Administrative Appeals Unit of the USCIS and argued why the decision to deny the petition was wrong.

39.     It argued that whether or not the product offered by the company was "truly different" from that of the competitors was not the proper line of inquiry since it contradicted USCIS' own policy on L-1B adjudications that while "specialized knowledge ordinarily cannot be knowledge that is generally possessed or easily transferrable, it need not be proprietary or unique to the petitioning organization." *See* Exhibit J, Counsel's Brief in Support of I-290B Motion to Reconsider; Exhibit K, USCIS Policy Memorandum, "L-1B Adjudications Policy (PM-602-0111)" (August 17, 2015) (submitted with Motion to Reconsider). The USCIS policy further stated – and Rajdhani further argued that – "knowledge generally may be specialized if a petitioner can demonstrate through credible and relevant evidence that the knowledge possessed by the beneficiary would be difficult to impart to another individual without significant economic cost or inconvenience to the petitioning organization." *Id.* Such was the case here. Because of the specificity with which *Maharaja Bhog*'s executive chefs are expected to produce each menu item and the amount of training required to meet such specificity, it would be economically costly

and inconvenient to send someone to India for two years to gain such knowledge. *Id*.

40.    With respect to the USCIS' contention that the position of Executive Chef did not appear to require specialized knowledge since they appeared to be typical of any executive chef in a restaurant, Rajdhani argued that the contention was again, not consistent with the USCIS' policy which states that "[e]mployees who work in any industry and serve in any type of position may be classified as L-1B nonimmigrants, so long as the position described in the L-1B petition requires specialized knowledge and the beneficiary is found to possess such knowledge." *Id*. Further, "[a] petitioner is not required to demonstrate that . . . it is the only company that trades in the technologies, techniques, products, services, or processes that are the subject of the beneficiary's knowledge." *Id*.; Exhibit K.

41.    Thus, while some Executive Chef duties at this company may overlap with generalized duties of any executive chef, only those who have trained under Mr. Maheshwari for the mandatory two-year period can fulfill the company's business objectives. *Id*. As counsel argued in his brief, "*Maharaja Bhog*'s ability to serve precisely the same meal to all of its customers around the world in a single day is one of the achievements it prides itself on, and it would detract significantly from *Maharaja Bhog*'s reputation if customers could no longer expect those same flavors and textures regardless of which location they visit. As food-related duties and staff

16

training constitute more than 50% of the Executive Chefs duties, it would not be unfair to say an Executive Chef who does not have Beneficiary's specialized knowledge would not be able to perform the duties of this position successfully. *Id*.

42.     Furthermore, counsel also argued that Mr. Kashyap met at least three, if not all six, of the non-exhaustive list of factors in the USCIS Policy Memo that it may consider when determining specialized knowledge. *Id*. As provided in the Memo, the factors are follows:

1) Beneficiary possesses knowledge of foreign operating conditions that is of significant value to the petitioning organization's U.S. operations.
2) Beneficiary employed abroad in a capacity involving assignments that have significantly enhanced the employer's productivity, competitiveness, image, or financial position.
3) Beneficiary's claimed specialized knowledge normally can be gained only through prior experience with the petitioning organization.
4) Beneficiary possesses knowledge of a product or process that cannot be easily transferred or taught to another individual without significant economic cost or inconvenience (because, for example, such knowledge may require substantial training, work experience, or education).
5) Beneficiary possesses knowledge of a process or a product that either is sophisticated or complex, or of a highly technical nature, although not necessarily unique to the petitioning organization.
6) Beneficiary possesses knowledge that is particularly beneficial to the petitioning organization's competitiveness in the marketplace.

*Id*; Exhibit K.

43.     Rajdhani, through counsel, argued that Mr. Kashyap met factors 3-5 because the position of an Executive Chef is integral to the operations of a restaurant.

*Id.* Mr. Kashyap was one of the only two executive chefs available at the Mumbai locations in India and between 2014-2015, the company reported more than 150% increase in gross revenue, which can be fairly attributed to Mr. Kashyap's ability to run the kitchen and the restaurant in the manner intended. *Id.*

44.     Rajdhani further argued that the USCIS' contention that Mr. Kashyap did not possess advanced level knowledge or expertise in the organization's processes and procedures was incorrect because it applied an incorrect standard. *Id.* As defined in USCIS' own Policy Memo, Exhibit K, advanced knowledge is "knowledge of or expertise in the petitioning organization's specific processes and procedures that is not commonly found in the relevant industry and is greatly developed or further along in progress, complexity and understanding than that generally found within the employer." *Id.* (emphasis removed from original). However, "such knowledge need not be narrowly held within the petitioning organization. Multiple employees within a company may have obtained the experience, training or education necessary to possess the same type of specialized knowledge." *Id.* USCIS, while contradicting itself, had nevertheless acknowledged that *Maharaja Bhog*'s tools and processes were substantially different from others in the industry. *Id.*; Exhibit I. While other employees and subordinates may possess some of the knowledge that an Executive Chef possesses, none possessed the knowledge that an Executive Chef did. *Id.* And as far as the issue on Mr. Kashyap

possessing advanced level knowledge went, it was irrelevant because a beneficiary need not be the sole holder of such knowledge for it to qualify as a specialized knowledge. *Id*. As the Memo provided, advanced knowledge is uncommon knowledge in the relevant industry that is more advanced than that "generally found ***within the employer***." *Id*.; Exhibit K. (emphasis added).

45.     Following the motion to reconsider, the VSC reopened the petition and granted it on October 20, 2017. Exhibit L, Reopen Notice of Original Petition (Dec 7, 2016) and Approval Notice of Original Petition (Oct 20, 2017).

Request for Extension of L-1B and Requests for more evidence

46.     Rajdhani, Inc. filed for an extension of the L-1B petition for Mr. Kashyap on Feb 21, 2019 seeking to extend his status. Nothing about the position or Mr. Kashyap's qualifications had changed since the original petition was approved. In support of the extension, Rajdhani submitted a cover letter describing the parent company, detailed job description with percentage of time spent on each job duty, and Mr. Kashyap's qualifications and describing the specialized nature of his position. *See* Exhibit M, Rajdhani, Inc. Letter (submitted with L-1B extension request). Also submitted was corporate registration documents for the U.S. company, financial documents and corporate tax returns, stock ledger and stock certificates, organizational chart, company website and other evidence of business

operations including Texas Franchise Tax Report for the most recent year. *See* Exhibit N, Table of Contents listing evidence submitted with the extension request.

47. The California Service Center ("CSC") of the USCIS determined not only that the evidence submitted did not satisfy the requirements it found lacking for the specialized knowledge issue in the original petition, but also that there was no evidence of even a qualifying relationship between the U.S. and foreign entities. *See* Exhibit O, Request for Evidence on Extension Request (Jun 3, 2019).

48. In response, Rajdhani, through counsel, pointed to the stock ledger, stock certificates and the relevant ownership pages of Petitioner Rajdhani and Maheshwari, Inc. (registered as a Delaware corporation), that were submitted with the extension request which showed that Rajdhani is 51% owned and wholly controlled by Maheshwari, Inc. *See* Exhibit P, Counsel's Brief In Support of Response to Request for Evidence on Extension Request. Counsel also pointed to similar documents which showed that Maheshwari, Inc. was in turn wholly owned and controlled by the foreign parent company, Maheshwari India. *Id.* Thus, a clear and qualifying relationship did exist, the evidence of which was submitted with the extension request and ignored completely by the USCIS.

49. Regarding the specialized knowledge issue, USCIS essentially reprinted the same request for evidence that VSC had previously sent for the original petition, finding that there was no evidence to establish: that beneficiary was

employed in a specialized knowledge capacity abroad; that he did not have prior education, training, and employment that qualified him to perform the intended job in the U.S.; and that he will be employed in a specialized knowledge capacity in the U.S. *Id*.; Exhibit O.

50.     Rajdhani submitted an additional letter that addressed all these issues, reiterating that all the evidence for this issue had been previously addressed in the response to the Request for Evidence for the original petition, and in the subsequent appeal. *See* Exhibit Q, Rajdhani, Inc. Letter (submitted in response to Jun 3, 2019 Request for Evidence). A supporting letter was also submitted by Maheshwari India Exhibit R, Letter from Nandkishore Maheshwari (submitted in response to Jun 3, 2019 Request for Evidence). The letter lamented that because of USCIS' arbitrary reasons for finding that the position was not specialized enough, it had already lost $250,000 USD in a lease forfeiture in connection with a planned new location for the restaurant. *Id*. Rajdhani argued, if the same position for the same person in the same capacity had been found to be involving specialized knowledge, then the same evidence should have sufficed to approve an extension of the original petition the USCIS approved. *Id*.

51.     Despite Rajdhani's response and additional documents submitted (along with a resubmission of documents that was already in USCIS record), the CSC <u>again</u> reprinted yet another request for evidence on Jul 9, 2020, still contending

that the evidence submitted was insufficient, and again asked for the same documents previously submitted and already in record with the USCIS. *See* Exhibit S, Second Request for Evidence on Extension Request (Jul 9, 2020). It asked for documents like: beneficiary's pay records; organizational chart showing staffing levels which clearly identifies beneficiary's position; and other irrelevant evidence which pertained to a managerial or executive position rather than one that entails specialized knowledge. *Id*.

52.    By this time, Rajdhani had submitted these documents four times and it had been almost a year and a half since the extension request was submitted. Mr. Kashyap had been out of a job and the company without an executive chef, substantially affecting its business and goodwill with its customers. *See* Exhibit Q. Additionally, it was unable to move forward with a relocation to a larger storefront without an Executive Chef, which resulted in approximately $2.5 million USD in lost sales and loss of employment for at least 20 U.S. workers, as well as an evaporation of 25 new positions. *Id*.

Denial of the L-1B Extension Request

53.    On November 20, 2020 the CSC denied the L-1B extension request, virtually reaching the same finding that VSC had reached in denying the Original Petition first filed in 2016 before it had reopened and granted it. *See* Exhibit T, Notice of Denial of L-1B Extension Request (Nov 20, 2020). The specific findings

22

were as follows: (1) the evidence submitted was insufficient to establish that Mr. Kashyap had been employed abroad in a position that involved specialized knowledge because the job duties did not "sufficiently establish" how they were "special" or "advanced"; (2) that the use of the company's specific processes and procedures did not equate to specialized knowledge that could not be easily transferred to another employee within the organization or within the field; (3) that it was unable to determine whether Mr. Kashyap had any specialized knowledge; and (4) that the U.S. position did not involve specialized knowledge. *Id.*

## VII.   STATEMENT OF CLAIMS:

### <u>COUNT ONE</u> – Violation of the Administrative Procedures Act, 5 U.S.C. § 701, et. seq., and Violation of the Immigration and Nationality Act § 101(a), et. seq. and its Implementing Regulations, 8 C.F.R. § 214.2(l), et. seq.

54.    Plaintiff re-allege and incorporate herein by reference, allegations in paragraphs 1-53 as if fully set forth herein.

55.    The Administrative Procedure Act ("APA") empowers this Court to hold unlawful and set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

56.    "While judicial review of agency decisions is highly deferential, it is not without teeth.*" Raj & Co. v. U.S. Citizenship & Immigration Servs.*, 85 F. Supp. 3d 1241, 1248 (W.D. Wash. 2015). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of

the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). However, the APA empowers courts to "strike down an agency action as arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or if the agency's decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 878 F.3d 725, 732 (9th Cir. 2017) (*quoting Motor Vehicle Mfrs.*, 463 U.S. at 43).

57.    USCIS' decision dated Nov 20, 2020 denying Rajdhani, Inc.'s L-1B extension petition ran counter to the evidence, relied on factors Congress did not intend to be considered, lacked a rational explanation, was implausible, and was arbitrary, capricious, an abuse of discretion, and not in accordance with law.

58.    USCIS had approved Rajdhani's original L-1B petition for Mr. Kashyap after issuing a Request for Evidence, a denial, and a subsequent reopening. However, to extend the same L-1 status for two more years, USCIS requested even more evidence issuing two additional requests for evidence and repeatedly asking for documents Rajdhani had already submitted into evidence. *See* Exhibits O and S. Then it denied the extension request, completely ignoring any of the evidence it already had on record and repeating its contention that the evidence submitted was

insufficient to establish (1) that Mr. Kashyap had been employed abroad in a position that involved specialized knowledge; (2) that he was qualified to perform his job duties in the U.S.; and (3) that the U.S. position involved specialized knowledge. Exhibit T.

59.     Thus, in denying the extension request, USCIS arbitrarily held Rajdhani to a higher standard of proof than the "preponderance of evidence" standard. *See U.S. v. Cardozo-Fonseca*, 480 U.S. 421 (1987) (explaining the preponderance of evidence standard to mean "more likely than not" which is defined as something that has a greater than 50 percent probability of occurring); *Matter of Chawathe*, 25 I&N Dec. 369 (AAO 2010). In doing so, it largely ignored its own policy and guidance for adjudication of L-1B petitions filed on behalf foreign employees who possess specialized knowledge of the petitioning company's products or services. *See* Exhibit K.

60.     Essentially, in finding that the position of the Executive Chef did not involve specialized knowledge, what the USCIS attempts to prove is that *Maharaja Bhog* is just another Indian restaurant with a menu that is commonly found in other Indian restaurants such that any local chef would be able to create the dishes. However, this conclusion completely ignores the whole business model of the company as presented by Rajdhani in its filings. As explained *supra*, the company prides itself in offering a unique experience to its customers by changing the menu

daily to freshly provide over 900 different items in a month in such a manner that any one customer at any one particular location on any given day would enjoy the same variety of dishes.

61.    Rajdhani attempted to make USCIS understand this concept repeatedly by providing more and more details and supporting documents spanning over 700 pages. Yet, in refusing to acknowledge this plethora of evidence in its record by requesting same documents repeatedly, while simultaneously failing to provide an explanation as to why its previous decision to approve the original petition was in error, the USCIS acted in an arbitrary and capricious manner.

62.    Congress's intent in creating the L-1B visa is clear. USCIS's own policy memorandum on L-1B explains it as follows:

> In 1970, Congress created the L-1 visa program after concluding that immigration laws at the time unduly restricted the transfer and development of foreign personnel vital to the interests of U.S. businesses.
> . . .
>
> The legislative history indicates that Congress intended for the class of eligible persons to be narrowly drawn, but Congress also anticipated that the L-1 petition process would be administered in an efficient way to facilitate qualifying personnel transfers for U.S. businesses.
> . . .
>
> Congress created the L-1B classification so that multinational companies could more effectively transfer foreign employees with specialized knowledge to their U.S. operations, enhancing such companies' ability to leverage their workforces. Employees who work in any industry and serve in any type of position may be classified as L-1B nonimmigrants, so long as the position described in the L-1B

26

petition requires specialized knowledge and the beneficiary is found to possess such knowledge. Creation of the program reflected Congress' concerns with meeting the workforce needs of multinational employers operating in an increasingly global marketplace. USCIS' mission is to ensure that the objectives of the L-1B program are achieved and that the program's integrity is maintained.

Exhibit K.

63.     Through the passage of the Immigration Act of 1990, Pub. L. No. 101-649, Congress defined what constitutes "specialized knowledge" and Legacy Immigration and Naturalization Service "revised its L-1 regulations to include a more liberal interpretation of specialized knowledge." *Id*. Specifically, the requirement for proprietary knowledge was eliminated which permitted "a finding of specialized knowledge in more varied circumstances" consistent with Congress's intent "to enhance the ability of multinational employers to use the specialized skills of their employees and to promote the United States as a global business destination." *Id*. Specialized knowledge is, thus, *not* proprietary, unique, or narrowly held knowledge. *Id*.; *see also supra* Part IV ¶¶ 18-21.

64.     To find that an employee meets each eligibility requirement of the L-1B classification, USCIS must employ the "preponderance of evidence" standard which is a lower standard of proof than the "clear and convincing" or "beyond a reasonable doubt" standard. *Id*. "The petitioner does not need to remove all doubt from the adjudication" but must consider all relevant, probative, and credible

evidence "individually and within the context of the totality of the evidence" which leads to a conclusion that the claim is "more likely than not" or "probably true." *Id.*

65.   In finding that the position of Executive Chef at the company did not involve specialized knowledge and that Mr. Kashyap did not possess any specialized knowledge, the USCIS held Rajdhani to a higher standard than it was required to show by its own policy.

66.   For example, in filing the extension request, Rajdhani had provided detailed job duties for the position of Executive Chef with percentages of time spent on each duty. *See* Exhibit M, Rajdhani, Inc. Letter (submitted with L-1B extension request). The largest part of the job duties of an Executive Chef, i.e., 25%, included "creating dishes to match Maheshwari's daily menu using locally available fresh ingredients. *Id.* The second largest at 15% was "training and directing chefs and staff in *Maharaja Bhog*'s Indian specialty recipes to implement its signature menu items and concept." *Id.* Rajdhani had explained that because there were no written recipes, an Executive Chef must be able to create the dishes by utilizing the specialized knowledge and training that he has gone through with Mr. Ashish Maheshwari to keep the consistency in taste, preparation style and execution, because consistency was key to success of their restaurants and implementation of their business model and vision. *Id.*

67.     Finding that these job duties were "general" and not descriptive enough to be considered specialized knowledge, the USCIS requested:

> "[a] detailed description of the services to be performed which may include information regarding:
>  o     the specific nature of the industry or field involved,
>  o     the nature of the petitioning organization's products or services,
>  o      the nature of the specialized knowledge required to perform the beneficiary's duties, and
>  o     the need for the beneficiary's specialized knowledge."

Exhibit O.

68.     All of this evidence was provided in increasing detail by Rajdhani **four** times. *See* Exhibits G, M, Q, R. Yet, the final denial notice of the extension request simply found that the evidence "[did] not support a conclusion that the beneficiary's duties with the foreign company involved specialized knowledge" and failed to explain why, leaving Rajdhani frustrated and confused as to what type of evidence USCIS was exactly looking for. Exhibit T, Q.

69.     As such, the Defendants not only disregarded pertinent evidence and arguments in the record, they also failed to articulate a rational connection between the record and the decision to deny to extension request. Thus, the denial was arbitrary, capricious, and an abuse of discretion; it was unsupported by substantial evidence and unwarranted by the facts to such an extent that they are subject to a de novo review. 5 U.S.C. § 706; *see See Stellar IT Solutions, Inc. v. USCIS*, Civ. No. 18-2015 (RC), at 20-22 (D.C.D.C. Slip Op. 11/19/18) (USCIS lacked "reasonable

justification" to deny H-1B petition, considering failure to acknowledge a company letter and other directly responsive evidence.") (copy attached hereto as Exhibit U); *Fogo De Chao (Holdings), Inc. v. United States Dep't of Homeland Sec.*, 211 F. Supp. 3d 31, 36 (D.D.C. 2016) ("when a party seeks review of agency action under the APA, the district court sits as an appellate tribunal and the entire case on review is a question of law.") (citing *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083, 348 U.S. App. D.C. 77 (D.C. Cir. 2001)) (internal quotation marks omitted).

70.    To show that the position of Executive Chef involved specialized knowledge, Rajdhani provided evidence of the company's business model, its vision, and described how its operations were different in comparison to other similar restaurants. *See* Exhibits D; A, C, F-H, M, Q-R. It provided highly detailed job duties for the position, emphasizing why it could not simply hire a local chef and how it would be highly inconvenient for the company to impart the same knowledge to another worker because of the substantial time involved in training to be efficient. *Id*. USCIS has provided in its policy manual that one factor it may consider in determining whether a beneficiary's knowledge is specialized is to consider whether it can be gained only through prior experience with the petitioning organization. Exhibit K. Other factors include whether the knowledge cannot be easily transferred or taught without significant economic cost or inconvenience; whether the beneficiary knowledge is particularly beneficial to the petitioning organization's

competitiveness in the marketplace. *Id*. Rajdhani provided evidence that Mr. Kashyap had been employed with the company for over eight years and had undergone the two-year training in order to become proficient in such a way that he was able to create the over 900 menu items from memory. *See* Exhibits C-E. Thus, the evidence provided by Rajdhani, "when assessed in the totality of the circumstances" was sufficient to establish by a preponderance of the evidence that the position involved specialized knowledge and that Mr. Kashyap possessed such knowledge. Exhibit K.

### <u>COUNT TWO</u> – Injunctive Relief for Irreparable Harm Caused by Violation of Administrative Procedure Act 5 U.S.C. § 705

71.     Plaintiff re-allege and incorporate herein by reference, allegations in paragraphs 1-71 as if fully set forth herein.

72.     Pursuant to 5 U.S.C. § 705, to the extent necessary to prevent irreparable injury, this Court may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve the status or rights pending conclusion of the review proceedings.

73.     The denial of Rajdhani's L-1B extension request will cause irreparable harm to both Plaintiffs because it would require an abrupt departure of Mr. Kashyap from the United States, leaving the restaurant in Houston without an Executive Chef to continue its operations, causing significant financial loss, loss of reputation and

the goodwill of its customers that it has spent so many years garnering. If Mr. Kashyap were to continue working for the company in order to prevent such a substantial loss, he would do so at his own peril by working without authorization, and accruing unlawful presence in the U.S. and subjecting himself to potential detention, deportation, and a bar from reentry ranging from 3-10 years. 8 U.S.C. § 1182(a)(9)(B)(i).

74.   In comparison, postponing the effectiveness of the denial will not require any action on the part of the Defendants and will not cause them any harm whatsoever.

75.   Therefore, Plaintiffs are entitled to a temporary restraining order and preliminary injunction postponing the effectiveness of the denial because Plaintiffs have shown they will likely succeed on the merits; they are likely to suffer irreparable harm in the absence of preliminary relief; the balance of the equities are in favor of Plaintiffs since the Defendants are not prejudiced in any way by granting the requested relief; and granting the relief is in accord with the public interest in enforcing the APA. The purpose of preliminary injunctive relief is to preserve the status quo or prevent irreparable injury pending the resolution of the underlying claim. *Texas v. United States*, 86 F. Supp. 3d 591, 674 (S.D. Tex. 2015); *Roberts v. Am. Bank & Tr. Co.*, 835 F. Supp. 2d 183, 207 (E.D. La. 2011); *Sierra On-line, Inc., v. Phoenix Software, Inc.*, 739 F.2d 1415 1422 (9th Cir. 1984). A temporary

restraining order is available to maintain the status quo that existed before a USCIS petition denial, to permit the beneficiary to remain and continue working in the United States.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court grant the following reliefs:

76.    Assume jurisdiction over this matter and review the USCIS's decision to deny Plaintiffs' non-immigrant visa petition;

77.    Hold unlawful and set aside Defendants' decisions denying the I-129 petition filed by Rajdhani, Inc. on behalf of Mr. Kashyap;

78.    Enter an Order requiring Defendants to reopen and approve Plaintiffs' I-129 extension petition in favor of Mr. Kashyap;

79.    Grant Plaintiffs' request for a temporary restraining order and for preliminary injunction postponing the effectiveness of USCIS' decision and reinstating Mr. Kashyap's lawful immigration status retroactively as of the date the decisions were made, thereby allowing him to continue working for Rajdhani and for him to remain in the United States while the appeal is pending;

80.    Grant reasonable attorney's fees and costs as provided under the Equal Access to Justice Act and the APA and as otherwise permitted by law;

81.    Grant any and all such further relief as the Court deems just and proper.

DATED: January 4, 2021                         Respectfully submitted,

                                               /s/ Merina Shakya
                                               _____

                                               Merina Shakya
                                               **Attorney-in-Charge for Plaintiffs**
                                               **State Bar # 24089912**
                                               SDT # 3206704
                                               **Quan Law Group, PLLC**
                                               **5444 Westheimer Rd., Ste. 1700**
                                               Houston, TX 77056
                                               Ph. 713-625-9200
                                               Fax. 713-625-9222

                                               /s/ Gordon J. Quan
                                               _____

                                               Gordon J. Quan
                                               **Attorney for Plaintiffs**
                                               **State Bar # 6422400**
                                               SDT # 428346
                                               **Quan Law Group, PLLC**
                                               **5444 Westheimer Rd., Ste. 1700**
                                               Houston, TX 77056
                                               Ph. 713-625-9200
                                               Fax. 713-625-9222

                                               /s/ Jason F. Kyriakides
                                               _____

                                               Jason F. Kyriakides
                                               **Attorney for Plaintiffs**
                                               **State Bar # 24097962**
                                               SDT # 3365105
                                               **Quan Law Group, PLLC**
                                               **5444 Westheimer Rd., Ste. 1700**
                                               Houston, TX 77056
                                               Ph. 713-625-9200
                                               Fax. 713-625-9222